# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TWYLA TURNER, <br> 17000 Maple Hts. Blvd. <br> Maple Heights, Ohio 44137, <br><br> Plaintiff, <br><br> v. <br><br> CLEVELAND PUBLIC LIBRARY, <br> 325 Superior Avenue East <br> Cleveland, Ohio 44114, <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br> COMPLAINT <br> *(Jury Demand Endorsed Hereon)* |

Now comes Plaintiff Twyla Turner ("Turner" or "Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendant Cleveland Public Library ("CPL" or "Defendant") states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Twyla Turner is a citizen of the State of Ohio, residing in Cuyahoga County. Plaintiff is a "person" or an "employee" as those terms are defined under O.R.C. § 4112.01; 42 U.S.C. § 2000e et seq.; and 29 U.S.C. § 2611.

2. Defendant is a public library with its principal place of business in Cuyahoga County, Ohio. CPL is a "person" and an "employer" as those terms are defined under O.R.C. § 4112.01; 42 U.S.C. § 2000e-2(a) and (f); and 29 U.S.C. § 2611.

3. This Court has jurisdiction over Plaintiff's claims in this matter pursuant to 28 U.S.C. § 1331, as this matter involves a federal question, namely a claim of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., a claim of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 et seq., a claim of disability

discrimination and failure to accommodate under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., a claim of interference of rights under the Family Medical Leave Act, 29 U.S.C. § 2615 et seq., and a claim of discrimination under the Family Medical Leave Act, 29 U.S.C. § 2615 et seq.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as well as the local rules of this Court because a substantial part of the events and activity giving rise to Plaintiff's claim for relief occurred within this judicial district.

## FACTUAL BACKGROUND

5. Plaintiff is a Black woman and, thus, in a protected class.

6. Plaintiff was hired by Defendant to serve as its Director of Inclusion and Leadership Education beginning April 2021.

7. In her role, Plaintiff reported directly to Dr. Sadie Winlock, Defendant's Chief Equity, Education and Engagement Officer.

8. Dr. Winlock is also a Black woman.

9. Soon after beginning employment with Defendant, Plaintiff was warned by Defendant's Executive Director and CEO, Felton Thomas, Jr. ("Thomas"), and Defendant's Director of Community Engagement, Aaron Mason ("Mason"), to "watch out" for a particular employee ("Employee A") because they were aware Employee A did not support diversity, equity, and inclusion ("DEI") efforts in the workplace.

10. Mason, directly or indirectly, supervised Employee A and Employee A worked regularly with Plaintiff.

11. Almost immediately, Employee A lodged frequent and baseless complaints against Plaintiff, Dr. Winlock, and DEI programming.

12. Employee A did not make similar complaints about white employees.

13. On more than one occasion Plaintiff notified Lynn Sargi, Defendant's Chief Talent Officer in charge of Human Resources, and Bryan Szalewski, Defendant's Director of Legal Affairs, of Employee A's frequent complaints, their impact on Plaintiff's ability to successfully complete her work, and Plaintiff's good faith belief that Employee A's complaints against her were "intentional and targeted," resulting in a discriminatory, harassing, and hostile work environment.

14. Plaintiff further notified Defendant of other employees creating a discriminatory, harassing, and hostile work environment, including an employee making negative and discriminatory comments regarding her, Dr. Winlock, and DEI programming to a vendor.

15. Despite Plaintiff's objections, the discriminatory and harassing conduct continued.

16. On April 14, 2022, Plaintiff made a formal complaint to Defendant, stating she was experiencing "targeted workplace harassment and discrimination," and further asserting Defendant's employees "continuously harassed, discriminated against, and targeted" Plaintiff, "creating an unbearably hostile work environment," which Defendant had failed to correct despite Plaintiff's regular objections.

17. Defendant alleged it was investigating Plaintiff's complaint.

18. In or around July 2022, Defendant closed the alleged investigation into Plaintiff's complaint, told Plaintiff there was no action it was willing to take, and the conduct continued.

19. Around this time, Defendant interviewed Plaintiff regarding a separate investigation involving Dr. Winlock.

20. During the interview, Plaintiff again expressed concerns over the discriminatory and harassing conduct Plaintiff and Dr. Winlock experienced at the hands of Defendant's

employees and Defendant's failure to correct the conduct, resulting in a discriminatory and hostile work environment.

21. Dr. Winlock was subsequently put on indefinite leave and Plaintiff began reporting directly to Thomas.

22. Approximately one month later, on August 5, 2022, Plaintiff went to an urgent care facility, after being unable to get a timely appointment with her primary care provider ("PCP"), where she sought treatment for, and received a diagnosis of, manifestations of a mental health condition, specifically "stress" and "hives," and was urged by her care provider to seek a medical leave to address her serious health condition because it made Plaintiff unable to perform the essential functions of her job.

23. On the same day, Plaintiff notified Defendant and Defendant's Third-Party Administrator ("TPA") that she saw a medical provider and that she intended to take leave under the Family Medical Leave Act ("FMLA") beginning Monday, August 8, 2022.

24. Defendant confirmed receipt of Plaintiff's notice.

25. After Plaintiff inquired, Defendant directed Plaintiff to use "the FMLA code" on her timesheet "as long as [her] FMLA [wa]s in pending status." Plaintiff was not provided with any additional call-off instructions.

26. Plaintiff began leave on August 8, 2022 and was paid, using sick leave and paid time off, beginning August 8, 2022.

27. On or around this time, Defendant's TPA requested that, in addition to the medical documentation Plaintiff had already provided from her August 5, 2022 appointment, Plaintiff provide a medical certification.

28. Plaintiff, at the direction of Defendant's TPA, requested the urgent care provider complete the certification, but learned the urgent care facility had a practice of not completing such certifications, and directed Plaintiff to seek such certification from a PCP.

29. Plaintiff immediately notified Defendant's TPA of the urgent care facility's policy and its recommendation to seek certification from a PCP, and Defendant's TPA directed Plaintiff to see a PCP to have the certification completed.

30. Plaintiff, following Defendant's TPA's instructions, scheduled the first available appointment with a PCP, which was on August 23, 2022.

31. On August 23, 2022, at an appointment with a PCP, Plaintiff was again diagnosed with mental illness, specifically "major depressive disorder" and "stress causing hives [that] will need medical attention."

32. During this appointment, the PCP completed the medical certification indicating Plaintiff's serious medical condition made her unable to perform essential functions of her job and required leave from work under the FMLA.

33. Defendant's TPA received this medical certification directly from the PCP.

34. On August 29, 2022, Plaintiff was notified by Defendant's TPA that her FMLA claim remained in pending status.

35. On or around August 30, 2022, Plaintiff exhausted her paid time off, but remained on leave.

36. On September 8, 2022, Plaintiff communicated her willingness to consider a work from home accommodation depending on the status and outcome of her FMLA claim.

37. Defendant did not participate in the interactive process and denied Plaintiff's request for accommodation outright and without consideration on September 13, 2022.

5

38. Defendant claimed it denied Plaintiff's request for accommodation because her FMLA claim was still pending.

39. On September 15, 2022, Defendant's TPA determined Plaintiff was not entitled to *continuous* leave under the FMLA.

40. Defendant's TPA directed Plaintiff to request leave under the FMLA *again*, using the same medical certification, but indicating Plaintiff was requesting *intermittent* leave, which Plaintiff did.

41. In doing so, Defendant placed onerous procedural burdens on Plaintiff.

42. On September 26, 2022, Plaintiff communicated the status of her medical condition, her understanding of the status of her leave, her efforts to provide all requested documentation to Defendant's TPA, and her willingness to work with accommodations if necessary to Defendant.

43. Defendant's TPA notified Plaintiff on September 27, 2022, that her leave request under the FMLA was in pending status.

44. Despite Plaintiff's pending leave status, Defendant cancelled Plaintiff's health benefits effective September 30, 2022.

45. On October 7, 2022, Defendant's TPA approved Plaintiff's intermittent leave under the FMLA for the serious medical condition of mental illness and physical manifestations of such, including stress causing hives, based on the medical documentation, dated August 5, 2022, and medical certification, dated August 23, 2022, provided to Defendant's TPA by Plaintiff and/or her medical providers in August.

46. Remarkably, Plaintiff was notified by Defendant on October 7, 2022 a pre-termination meeting was scheduled for October 14, 2022 "to discuss [her] unauthorized absences, and failure to report [her] absences to the 'CPL Absent Reporting Line,' since August 8, 2022."

47. Specifically, Defendant claimed Plaintiff's absences from August 8, 2022 "may be in violation of CPL's Discipline policy 'Abuse of time, absenteeism' and CPL's Attendance policy E03-1a, which reads in pertinent part: 'Attendance abuse infractions include, but are not limited to: Absences that cannot be covered by paid time off unless on an approved leave of absence' and 'Improper notification of absences to the library (i.e., failure to call-off or follow call-of [sic] procedures).'"

48. In response, Plaintiff told Defendant that her absences were covered by paid time off and/or protected medical leave; that she followed all call-off and notification procedures as directed by Defendant; that she remained in regular contact with Defendant and Defendant's TPA throughout her leave and provided all requested documentation; and that she believed that she may need to seek legal counsel.

49. Nonetheless, Defendant held a "pre-termination" meeting with Plaintiff on October 14, 2022, where Defendant told Plaintiff it would place Plaintiff on a paid leave for seven days while it investigated that matter.

50. However, Defendant terminated Plaintiff just a few hours later on October 14, 2022 for "unauthorized absences and failure to make proper notification of [her] absences . . . since August 8, 2022."

51. Specifically, Plaintiff was told her termination was due to "violation of CPL's Discipline Policy #238 . . . Abuse of time, absenteeism, or tardiness," and "Attendance Policy E03-1a . . . Absences that cannot be covered by paid time off unless on an approved leave, no

7

call/no sow (failing to report to work), [and] Improper notification of absences to the library (i.e., failure to call-off or follow the call-off procedures) . . . since August 8, 2022."

52. Plaintiff was replaced by a white male.

53. Defendant's purported reason for termination is plainly false and is pretext for unlawful discrimination and retaliation.

54. Plaintiff was on paid leave from August 8, 2022 until approximately August 30, 2022.

55. Plaintiff's serious medical condition began no later than August 5, 2022, and Plaintiff was entitled to leave under the FMLA beginning on that date.

56. Plaintiff's medical certification was dated August 23, 2022, and Plaintiff was entitled to leave under the FMLA as of August 5, 2022, but no later than August 23, 2022.

57. Plaintiff was disabled, and perceived by Defendant to be as such, on August 5, 2022, and was entitled to accommodation, including a remote work accommodation, a short-term leave of absence, or intermittent leave under the Americans with Disabilities Act ("ADA") on that date.

58. Plaintiff followed all call-off procedures defined by Defendant throughout her leave.

59. Plaintiff has filed a timely charge of discrimination pursuant to O.R.C. § 4112.051 and the Ohio Civil Rights Commission has issued a Notice of Right to Sue pursuant to O.R.C. § 4112.052(B)(1)(b)(i) on January 12, 2023. All procedural prerequisites to commencing suit have been met.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000 ET SEQ.

60. The preceding allegations are incorporated by reference as if fully rewritten herein.

61. Plaintiff is, and at all times was, a Black woman and therefore within a protected class.

62. Defendant, through its employees, subjected Plaintiff to unwelcome discrimination and harassment based on race.

63. Plaintiff objected to the discriminatory and harassing conduct on more than one occasion, but the conduct continued.

64. Plaintiff specifically objected to such conduct in April 2022 via email to Defendant and again in July 2022 during an investigatory interview with Defendant.

65. The frequency and/or severity of the discrimination and harassment created a hostile and abusive work environment.

66. Defendant was aware Plaintiff was subjected, and objected, to the discriminatory and harassing conduct.

67. Defendant failed to exercise reasonable care to prevent and correct the discriminatory and harassing conduct and is, thus, liable for such.

68. Defendant subjected Plaintiff to an adverse employment action, at least in part, because of her race, including, but not limited to, termination of her employment.

69. Plaintiff was subsequently replaced by a white male.

70. Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff's employment was nothing more than a pretext for race discrimination.

71. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

72. Defendant intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under Title VII.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.02

74. The preceding allegations are incorporated by reference as if fully rewritten herein.

75. Plaintiff is, and at all times was, a Black woman and therefore within a protected class.

76. Defendant, through its employees, subjected Plaintiff to unwelcome discrimination and harassment based on race.

77. Plaintiff objected to the discriminatory and harassing conduct on more than one occasion, but the conduct continued.

78. Plaintiff specifically objected to such conduct in April 2022 via email to Defendant and again in July 2022 during an investigatory interview with Defendant.

79. The frequency and/or severity of the discrimination and harassment created a hostile and abusive work environment.

80. Defendant was aware Plaintiff was subjected, and objected, to the discriminatory and harassing conduct.

81. Defendant failed to exercise reasonable care to prevent and correct the discriminatory and harassing conduct and is, thus, liable for such.

82. Defendant subjected Plaintiff to an adverse employment action, at least in part, because of her race, including, but not limited to, termination of her employment.

83. Plaintiff was subsequently replaced by a white male.

84. Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff's employment was nothing more than a pretext for race discrimination.

85. Defendant's conduct violated Ohio's Anti-Discrimination Act, O.R.C. §§ 4112.02.

86. Defendant intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under Ohio's Anti-Discrimination Act.

87. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

## COUNT III
## RETALIATION IN VIOLATION OF 42 U.S.C. § 2000 ET SEQ.

88. The preceding allegations are incorporated by reference as if fully rewritten herein.

89. Defendant subjected Plaintiff to unlawful discrimination and harassment throughout her employment.

90. Plaintiff objected to such unlawful conduct to Defendant on more than one occasion, including in April 2022 and July 2022.

91. Defendant subjected Plaintiff to adverse employment action, including between August 2022 and October 2022, at least in part because she objected to unlawful conduct to Defendant.

92. Such adverse employment action included denial of rights of which she was entitled under the FMLA and the ADA, termination of benefits, and termination of employment.

93. Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was nothing more than a pretext for retaliation.

94. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

95. Defendant intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under Title VII.

96. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

## COUNT IV
## RETALIATION IN VIOLATION OF O.R.C. § 4112.02

97. The preceding allegations are incorporated by reference as if fully rewritten herein.

98. Defendant subjected Plaintiff to unlawful discrimination and harassment throughout her employment.

99. Plaintiff objected to such unlawful conduct to Defendant on more than one occasion, including in April 2022 and July 2022.

100. Defendant subjected Plaintiff to adverse employment action, including between August 2022 and October 2022, at least in part because she objected to unlawful conduct to Defendant.

101. Such adverse employment action included denial of rights of which she was entitled under the FMLA and the ADA, termination of benefits, and termination of employment.

102. Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was nothing more than a pretext for retaliation.

103. Defendant's conduct violated Ohio's Anti-Discrimination Act, O.R.C. §§ 4112.02.

104. Defendant intentionally, willfully, wantonly, recklessly, and maliciously violated Plaintiff's rights under Ohio's Anti-Discrimination Act.

105. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

### COUNT V
### DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF 42 U.S.C. § 12101

106. The preceding allegations are incorporated by reference as if fully rewritten herein.

107. Defendant is a covered employer under the Americans with Disabilities Act, 42 U.S.C. § 12101.

108. Plaintiff is, and was, qualified for the position of Director of Inclusion and Leadership Education with Defendant, and is, and was, able to perform the essential functions of the position with or without accommodation.

109. Defendant was aware of Plaintiff's disability, and perceived Plaintiff to be disabled, no later than August 5, 2022.

110. Plaintiff requested an accommodation due to her disability no later than September 8, 2022.

111. Defendant failed to engage in the interactive process with Plaintiff and/or provide accommodation for such disability.

112. Defendant terminated Plaintiff's employment for reasons related to her disability.

113. Defendant's conduct violated the Americans with Disabilities Act, 42 U.S.C. § 12101.

114. Defendant's termination of Plaintiff's employment was intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

115. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

### COUNT VI
### DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF O.R.C. § 4112.02

116. The preceding allegations are incorporated by reference as if fully rewritten herein.

117. Defendant is a covered employer under the Americans with Disabilities Act, 42 U.S.C. § 12101 and O.R.C. §§ 4112.02.

118. Plaintiff is, and was, qualified for the position of Director of Inclusion and Leadership Education with Defendant, and is, and was, able to perform the essential functions of the position with or without accommodation.

119. Defendant was aware of Plaintiff's disability, and perceived Plaintiff to be disabled, no later than August 5, 2022.

120. Plaintiff requested an accommodation due to her disability no later than September 8, 2022.

121. Defendant failed to engage in the interactive process with Plaintiff and/or provide accommodation for such disability.

122. Defendant terminated Plaintiff's employment for reasons related to her disability.

123. Defendant's conduct violated Ohio's Anti-Discrimination Act, O.R.C. §§ 4112.02.

124. Defendant's termination of Plaintiff's employment was intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

125. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, and loss of past and future salary, wages, benefits, and other privileges and conditions of employment, and for past and future economic and non-economic compensatory damages, attorneys' fees, expert fees, costs, interest, and any equitable relief this Court deems appropriate.

### COUNT VII
### INTERFERENCE OF RIGHTS IN VIOLATION OF 29 U.S.C. § 2601 ET SEQ.

126. The preceding allegations are incorporated by reference as if fully rewritten herein.

127. Defendant, as a public entity, is a covered employer under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

128. Plaintiff, having been employed for over twelve months and having at least 1,250 hours of service in the twelve-month period preceding the leave, was an eligible employee under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. beginning no later than August 5, 2022.

129. Plaintiff suffered from a serious health condition that made Plaintiff unable to perform the essential functions of her job during flare-ups, entitling Plaintiff to leave under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

130. Plaintiff gave notice to Defendant of her intent to take leave as soon as possible and practicable given the circumstances on August 5, 2022.

131. Defendant, through its TPA, conceded as such when it certified Plaintiff's condition and approved her leave under the FMLA on October 7, 2022.

132. Nonetheless, Defendant denied Plaintiff leave to which she was entitled.

133. Plaintiff was denied future leave to which she was entitled as a direct result of her termination.

134. In addition, Defendant failed to continue Plaintiff's group health coverage while on leave.

135. Defendant's conduct violated the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

136. Defendant's termination of Plaintiff's health benefits and employment was intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

137. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, loss of past and future wages, salary, benefits, and other compensation, monetary losses, liquidated damages, attorneys' fees, expert fees, costs, interest and any equitable relief this Court deems appropriate, including reinstatement.

## COUNT VIII
## DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 2601 ET SEQ.

138. The preceding allegations are incorporated by reference as if fully rewritten herein.

139. Defendant, as a public entity, is a covered employer under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

140. Plaintiff, having been employed for over twelve months and having at least 1,250 hours of service in the twelve-month period preceding the leave, is an eligible employee under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. no later than August 5, 2022.

141. Plaintiff suffered from a serious health condition that made Plaintiff unable to perform the essential functions of her job during flare-ups, entitling Plaintiff to leave under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

142. Plaintiff gave notice to Defendant of her intent to take leave as soon as possible and practicable given the circumstances on August 5, 2022.

143. Defendant, through its TPA, conceded as such when it certified Plaintiff's condition and approved her leave under the FMLA on October 7, 2022.

144. Nonetheless, Defendant denied Plaintiff leave to which she was entitled.

145. In addition, Defendant failed to continue Plaintiff's group health coverage while on leave.

146. Plaintiff's group health coverage was terminated, at least in part, because she took leave.

147. Plaintiff was terminated, at least in part, because she took leave.

148. Defendant's conduct violated the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

149. Defendant's termination of Plaintiff's health benefits and employment was intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

150. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which Defendant is liable, including, but not limited to, loss of past and future wages, salary, benefits, and other compensation, monetary losses, liquidated damages, attorneys' fees, expert fees, costs, interest and any equitable relief this Court deems appropriate, including reinstatement.

WHEREFORE, Plaintiff demands judgment against Defendant, and prays for back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorneys' fees, interest, and costs of this action in an amount in excess of seventy-five thousand dollars ($75,000.00), as well as any other relief which this Court deems appropriate.

Respectfully submitted,

*/s/Lindsey K. Self*
Richard C. Haber (0046788)
Lindsey K. Self (0099647)
Natalie D. Davis (0102476)
HABER LLP
30195 Chagrin Blvd., Suite 323
Pepper Pike, Ohio 44124
Phone: (216) 250-4782
Fax: (216) 250-4783
rhaber@haberllp.com
lself@haberllp.com
ndavis@haberllp.com
*Attorneys for Plaintiff*

## **JURY DEMAND**

A trial by jury is hereby demanded.

>                  */s/Lindsey K. Self*
>                  Attorney for Plaintiff